141 So. 539

## FEDERAL LAND BANK OF NEW ORLEANS v. WILSON et al.

### 4 Div. 613.

Supreme Court of Alabama.

Jan. 14, 1932.

Rehearing Denied March 31, 1932.

C. B. Fuller, of Opp, for appellant.

F. B. Bricken and C. J. Kettler, both of Luverne, for appellees.

BOULDIN, J.

The Federal Land Bank, mortgagee of farm lands, upon default made in December 1930, did, in August 1931, foreclose the mortgage under power of sale, becoming the purchaser at such sale. At that time there was a growing crop on the premises, a portion being cultivated by the mortgagor, and a portion by his tenant under a tenancy created subsequent to the land mortgage.

After the foreclosure sale, demand was made for possession, or else that the occupants attorn to and pay rents to the bank. Both demands were refused. A suit in ejectment followed. Pending this suit, the occupants of the land proceeded to gather the crops and dispose of same in disregard of the claims of the bank.

Thereupon the present bill was filed in aid of the pending ejectment suit, alleging that the occupants are insolvent, that the ejectment suit cannot be determined in time to protect complainant's rights in the crops, and praying for the appointment of a receiver of the crops.

Upon complainant's giving the required bond, the register, without notice, appointed a receiver. At that stage respondents presented to the judge of the court a motion to discharge the receiver and vacate the appointment; also filed demurrers to the bill. The demurrers were sustained, and the receiver discharged; hence this appeal.

As for the equity of the bill, the case is strictly analogous to the very recent case of Federal Land Bank v. Lloyd, ante, p. 48, 138 So. 417.

We there held complainant entitled to the appointment of a receiver. It will be noted that interest of the purchaser at foreclosure sale in the growing crops recognized in that case is by way of security for mesne profits for use and occupation. The claim of complainant bank in the instant case is to like effect. The decision in the Lloyd Case, supra, is decisive of the main question in this case. But, because of the very great importance of the questions involved, we seek to further define as clearly as we may the rights of parties growing out of such situations.

The execution and recordation of a mortgage of real estate carries notice to all persons of the legal and equitable incidents thereof; the nature of the title in both mortgagee and mortgagor; the right to the possession and the usufruct.

Upon default, foreclosure, and demand for possession, at common law, crops growing on farm lands, being a part of the realty, become the property of the purchaser at fore-

closure sale. This applied to crops of the mortgagor or his tenant entering under a letting subsequent to, and therefore in subordination to, the mortgage.

By statute a crop mortgage given after the 1st day of January of the year in which it is grown passes the legal title. The mortgagor, remaining in possession of lands, either by virtue of stipulations entitling him so to do, or by grace of the mortgagee, is, as to all persons other than the mortgagee, the owner of the lands. He may cultivate same, or let it to tenants, and both may gather, remove, and make use of the crops as their own, even after default, unless and until the mortgagee has entered or made demand for possession. Metcalf v. Clemmons-Powers & Co., 200 Ala. 243, 76 So. 9. The crop mortgage, under our statute, passes only the title of the mortgagor. He cannot deplete the security of the mortgage by passing a whole year's usufruct of the mortgaged property. Thompson v. Union Warehouse Co., 110 Ala. 499, 18 So. 105.

The holders of crop mortgages executed since January 1st of the year in which crops. were grown in the instant case occupy no higher position than their mortgagor.

But what are the rights of the mortgagee or his purchaser at foreclosure sale under the existing law of Alabama as touching crops then on the lands?

Farm crops, corn, cotton, etc., are not the product of the land merely. They represent the labor of men, teams, outlays for machinery, seeds, fertilizers, etc. Certainly it is not to the public interest that lands lie idle to await the election of a mortgagee to foreclose or not. That the mortgagor in possession with the consent of the mortgagee when cropping time comes may proceed with his usual operations is obvious.

To permit the mortgagee to so time his foreclosure and demand for possession as to await the maturity of the crop, then take the fruits of all the labor and outlays which have gone into its making, is so obviously unjust, and even cruel in many instances, that a court of equity might well refuse to lend aid to such procedure. From our early history statutes have been in force modifying the severe rule of the common law as to growing crops.

Thus, in all judicial sales through proceedings in equity, the tenant or other occupant of the land having a crop growing or about to be planted thereon may retain possession during the current year upon executing bond to secure the payment of a reasonable rent. Code, § 6660. This includes foreclosure proceedings in equity. A severer result ought not to attend a foreclosure under power of sale.

In ejectment, a kindred statute limits the liability of a tenant by way of damages for detention, to the amount of rents in arrears or which accrue while he remains in possession. Code, § 7459. This statute, it has been said, intends to protect a tenant against double liability for rent. Comer v. Sheehan, 74 Ala. 452.

Another statute dealing directly with suits in ejectment for farm lands where the defendant has a crop planted or growing on the premises is found in Code, § 7472. Under this statute the jury must ascertain the rental value of the premises for the current year, and, on execution of a bond to secure the payment of such rent, no writ of possession must issue until the end of the year.

These statutes are not remedial merely. They are in recognition of legal and equitable rights; have regard for the principle that he who rightfully sows shall also reap.

Certainly, instead of bringing an ejectment suit, the purchaser at foreclosure sale may allow the occupant to remain on the lands undisturbed until the end of the year, demanding payment of rent. He, rather than the mortgagor-lessor or his assigns, is entitled on demand to the rents for the year. Buchmann v. Callahan, 222 Ala. 240, 131 So. 799.

The result of our statute is to vest in the owner of the reversion, that is, the successor to the title of the mortgagor-lessor of lands with growing crops thereon, the right to rents, not the absolute ownership of the crops.

The purchaser at mortgage sale of lands with growing crops thereon has not an unqualified right of possession. If the occupant stands ready, able, and willing to pay the reasonable rent to him, but he chooses, nevertheless, to sue in ejectment, the occupant can protect his possession and his crops only by securing the rents as fixed by the jury. Code, § 7472.

Receiverships are warranted only by necessity. The consuming process of a receivership is specially to be avoided in cases like this.

We are in full sympathy with the wish of the chancellor to avoid it. But the undenied removal and disposal of the crops by parties wholly insolvent, in disregard of the just claims of the complainant for rent, shows such necessity. When any of the parties in interest may secure the rents due to complainant under the sanction of the court, the receivership should be brought to a close with as little loss as practicable.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.