187 So. 732

**MARTIN v. MARTIN.**

4 Div. 78.

Supreme Court of Alabama.

March 30, 1939.

E. C. Boswell, of Geneva, for appellant.

Carmichael & Tiller, of Geneva, for appellee.

KNIGHT, Justice.

The plaintiff, appellant here, stated his cause of action against the defendant in two counts. In count 1, he claimed $300 for rent of a certain tract of land in Geneva County for the year 1934, while in count 2 he claimed the same amount for use and occupation of said lands for the year 1934.

At the conclusion of the evidence, the court gave the general affirmative charge for the defendant. There was verdict accordingly. From the judgment for defendant, entered upon this verdict, the appellant has prosecuted the present appeal.

But two errors are assigned upon the record. The first presents for review here the action of the court in giving, at the request of the defendant, the general affirmative charge in his behalf; and the second undertakes to challenge the propriety of the court's action in overruling plaintiff's motion for a new trial. We may dismiss this last contention with the observation that the bill of exceptions fails to show that any exception was reserved to the action of the court in overruling plaintiff's said motion. This, then, reduces the issue here to one single question. Did the court commit reversible error in giving the general charge, with hypothesis, for the defendant?

Upon the trial of the cause, it would appear that the defendant withdrew his third plea, which was a plea of set-off. There then remained in the case two other pleas, each, in legal effect, a plea of the general issue.

Whether the defendant's real defense to the action was available to him under the plea of the general issue we are not required to determine. The record discloses that the case was tried by the parties throughout upon the theory that whatever defendant owed for rent, or for use and occupation, was either owed to the plaintiff, or to the Federal Land Bank of New Orleans. It was the plaintiff's contention that the defendant was indebted to him for the rent, or for the use and occupation of the premises for the year 1934, under defendant's contract with plaintiff, while the defendant contended that the amount owed by him for said rent, or for use and occupation must be paid by him to the Federal Land Bank of New Orleans, the owner of the reversion at the time the rent, or the amount owing for use and occupation fell due. We will, therefore, review the ruling of the trial court as if this issue had been specially pleaded. Richmond & Danville R. Co. v. Farmer, 97 Ala. 141, 12 So. 86; Gainer v. Southern R. Co., 152 Ala. 186, 44 So. 652; Snellgrove v. Evans, 145 Ala. 600, 40 So. 567; Planters' & Merchants' Independent Packet Co. v. Webb, 156 Ala. 551, 46 So. 977, 16 Ann.Cas. 529.

We assume, from the ruling of the court, that it was of the opinion that defendant's contention was correct, as the defendant did not deny that he was indebted to one or the other of said parties.

In view of the fact that the court gave the general affirmative charge for the defendant, we will state the evidence in its most favorable aspect for the plaintiff:

The plaintiff offered testimony tending to show: that H. M. Martin, the plaintiff, owned a tract of land in Geneva County in 1934, and for some years prior thereto. Sometime prior to said year the said Martin and wife executed a mortgage on said lands to the Federal Land Bank of New Orleans. In the fall or winter of 1933 an installment payment fell due on this mortgage, and the mortgagors were unable to pay the same. The mortgagor was anxious to remain on the place during the year 1934, and his brother, J. E. Martin, desired to aid him in retaining the possession of the property during said year, if possible, and to that end, the said J. E. Martin entered into a contract with his brother for the rental, or for the use and occupation, of said lands for that year.

We will here state the terms of the alleged contract in the language of H. M. Martin, when testifying in his own behalf upon the trial: "J. E. Martin is my brother. In 1934, and prior to that time, I owned what is known as the J. K. P. Martin place in Geneva County. I lived on this farm. I made a trade or contract with my brother, J. E. Martin, in the Spring of 1934 relative to the rent or use of this farm. The Federal Land Bank had a mortgage on the place, I saw where I couldn't pay for the place, and they hadn't sold it or hadn't told me to move or nothing like that, and so my brother came to me and said, 'I will rent the place or I might take it up for you and let you stay on the place also,' and I says, 'Anyway, if I can stay on the place reasonable or right I will do so.' He says, 'I'll do one or the other, I will take up the place if there is not too much back dues on it' and so on, and 'if it is, I will just rent the place and if they don't turn you off the first six months, and if they do that I will have to pay them,' and he says, 'That is the law in that way,' and I says 'Well, any way, whichever the rent comes to we will let it go that way,' and he says, 'I will also then if they sell it the latter part of the year see what the rent will come to and I will pay you the rent and also rent it to you and your boys on the guano plan,' and we traded that way. And they didn't sell the place until the 16th day of August and he didn't pay the Federal Land Bank nor me either. Me and my boys cultivated the place for him, after he had rented it and made the contract as I have stated to the jury."

It appears from the evidence without dispute that the Federal Land Bank of New Orleans foreclosed its mortgage on said lands in August, 1934, and made demand for possession on mortgagor, and also, through its agent or representative, rented it to the said J. E. Martin for said year 1934 for the sum of $150. The said J. E. Martin has not paid any rent for said year either to said H. M. Martin or to said bank, but testified that he was ready to pay it to whomsoever it is due.

The testimony for plaintiff shows that no special amount was agreed upon between the plaintiff and the said J. E. Martin for the rent of said land. But the plaintiff offered testimony tending to show that $300 would be a reasonable rental for the year 1934.

It is but fair, however, to defendant to state that his testimony tended to show that he did not rent the property from the plaintiff, but, on the contrary, that he rented it from the Federal Land Bank of New Orleans, and never knew that the plaintiff claimed he had rented the property from him until some differences arose between them about a mule.

We do not construe the contract as testified to by the plaintiff as an absolute promise, or obligation to pay plaintiff for the use of the land for 1934, regardless of the law governing such cases, but rather to pay plaintiff, if he was not required to pay the Federal Land Bank of New Orleans, the purchaser at the foreclosure sale, for such use.

The evidence shows, without any sort of conflict, that the mortgage given by plaintiff and wife to the Federal Land Bank of New Orleans was executed long prior to the time of the alleged demise to the defendant; that default had occurred in the payment of the indebtedness secured by this mortgage; that this mortgage was duly foreclosed in August, 1934, before the maturity of any claim asserted

by the plaintiff, for rent, or for the use and occupation of the premises by the defendant; and that at the foreclosure sale, the mortgagee, the Federal Land Bank of New Orleans, became the purchaser, and, further, that upon such foreclosure and purchase, it made demand for possession of the premises. That the said J. E. Martin, defendant, had agreed to pay the said Bank $150 for rent of the land for said year 1934.

This court is firmly committed to the proposition that a valid foreclosure of a mortgage on lands cuts off the equity of redemption, and leaves in the mortgagor only the statutory right of redemption, to be exercised by him in the mode, and within the time, and upon the conditions prescribed by our redemption statute. Duncan v. Hubbard, 234 Ala. 202, 174 So. 291; Denson v. Provident Mutual Life Ins. Co., 231 Ala. 574, 166 So. 33; Goodwin v. Donohue, 229 Ala. 66, 155 So. 587.

We are equally as firmly committed to the further proposition that the foreclosure of a mortgage after the crops are planted, and active steps taken to intercept the rents, vest in the mortgagee-purchaser at the foreclosure sale the right to the accruing unpaid rents and such as may accrue during the tenant's possession for the term as mesne profits for use and occupation. Connecticut General Life Ins. Co. v. Smith, 226 Ala. 142, 145 So. 651; Federal Land Bank of New Orleans v. Wilson et al., 224 Ala. 491, 141 So. 539; First National Bank of Dothan v. Federal Land Bank of New Orleans, 225 Ala. 387, 143 So. 567; Buchmann et al. v. Callahan, 222 Ala. 240, 131 So. 799; Comer v. Sheehan, 74 Ala. 452; First National Bank of Dothan v. Federal Land Bank of New Orleans, 225 Ala. 195, 142 So. 546; Abbott v. Faulk, 231 Ala. 196, 164 So. 96.

It, therefore, follows that, under the undisputed facts in this case, the Federal Land Bank of New Orleans, and not the plaintiff, is entitled to the rent, or to the reasonable value of the use and occupation of said lands for the year 1934.

In giving the general charge for the defendant, the court committed no error, and its judgment is due to be affirmed. So ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.